PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. 2254

Prisoner's name:        DONALD DAVID DILLBECK

Prisoner's number:      DOC No. 068610

Place of Confinement:   UNION CORRECTIONAL INSTITUTION

Raiford, Florida

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF FLORIDA

TALLAHASSEE DIVISION

DONALD DAVID DILLBECK,

     Petitioner,

v.                    CASE NO. 4:07-cv-00388-SPM

JAMES R. McDONOUGH, JR.,
     Secretary, Florida
     Department of Corrections,

     Respondent,

and

BILL McCOLLUM,
     Attorney General,

     Additional Respondent.
_____/

AMENDED PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY

## INTRODUCTION

Pursuant to 28 U.S.C. 2254, Mr. Dillbeck presents the instant amended petition for habeas corpus relief. Violations of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution during Mr. Dillbeck's trial and penalty phase caused him to be wrongfully convicted of murder and sentenced to death. Mr. Dillbeck urges this Court to allow him to be fully and fairly heard.[1]

## REQUEST FOR EVIDENTIARY HEARING

Mr. Dillbeck requests that this Court conduct a plenary evidentiary hearing on the claims presented herein.

## STATEMENT OF THE CASE[2]

1.   On July 10, 1990, Donald Dillbeck was indicted in Leon County with one count of first degree murder, armed robbery and armed burglary (T. 2867-68). Mr. Dillbeck pled not guilty to these charges (T. 2881).

2.   Mr. Dillbeck proceeded to trial before the

_____

[1]This Court entered an Order appointing the undersigned as Mr. Dillbeck's counsel on September 11, 2007. Mr. Dillbeck, through counsel, requested leave to amend his initial petition. On November 27, 2007, this Court granted Petitioner's request for leave to amend. This amended petition is filed in compliance with that order.

[2]Citations in this petition are as follows:  References to the trial are designated as "T. ___".  References to the postconviction record on appeal are designated as "PCR.____". All other references are self-explanatory or otherwise explained herewith.

Honorable F.E. Steinmeyer, and the jury convicted him as charged (T. 3084-87).

3.   Subsequent to a penalty phase proceeding, the jury, by a vote of 8-4, recommended a sentence of death (T. 3089).   Thereafter, the trial court sentenced Mr. Dillbeck to death for first degree murder, and to two consecutive terms of life in prison for the armed robbery and armed burglary convictions (T. 3160-71).

4.   On direct appeal, the Florida Supreme Court affirmed Mr. Dillbeck's convictions and sentences.  <u>Dillbeck v. State</u>, 643 So. 2d 1027 (Fla. 1994).  The United States Supreme Court denied certiorari on March 20, 1995.  <u>Dillbeck v. Florida</u>, 514 U.S. 1022 (1995).

5.   On April 23, 1997, Mr. Dillbeck filed his original Rule 3.850 Motion.  An amended motion was filed on April 26, 2001.

6.   An evidentiary hearing was held on Mr. Dillbeck's motion on April 1, 2002, and thereafter, on September 3, 2002, the state lower court denied Mr. Dillbeck's motion.  The court made no findings of fact.

7.   On August 26, 2004, following Mr. Dillbeck's postconviction appeal, the Florida Supreme Court affirmed the denial of one ineffective assistance of counsel claim and remanded the remaining claims to the lower court to make the required findings of fact and conclusions of law regarding Mr.

3

Dillbeck's motion. <u>Dillbeck v. State</u>, 882 So. 2d 969 (Fla. 2004).  Mr. Dillbeck also filed a petition for writ of habeas corpus, which was denied by the Florida Supreme Court. <u>Id</u>.

8.   On appeal from the remand, the Florida Supreme Court affirmed the denial of postconviction relief. <u>Dillbeck v. State</u>, 964 So. 2d 95 (Fla. 2007).  The Florida Supreme Court issued its mandate on September 12, 2007.

9.   On September 7, 2007, Mr. Dillbeck filed a petition for writ of habeas corpus before this Court.  On that same date, Mr. Dillbeck's state postconviction counsel filed a motion requesting that undersigned be appointed to represent Mr. Dillbeck in his federal habeas corpus proceedings.  This motion was granted on September 11, 2007 (Doc. 5).

10.  On October 29, 2007, undersigned counsel filed a motion to amend Mr. Dillbeck's federal habeas corpus petition (Doc. 8).  This motion was granted on November 27, 2007 (Doc. 11).[3]

## CLAIMS FOR RELIEF

By his petition for writ of habeas corpus, Mr. Dillbeck asserts that his convictions and death sentence were obtained in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution for all the reasons set forth in the instant petition and presented to the Court in

---

[3]On November 1, 2007, Respondent filed his Answer to Mr. Dillbeck's petition for writ of habeas corpus.

this proceeding.

**GROUND I**

**MR. DILLBECK WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL DUE TO TRIAL COUNSEL'S FAILURE TO CONDUCT A PROPER VOIR DIRE.**

All factual assertions contained elsewhere in this petition are fully incorporated herein by specific reference.  This claim is evidenced by the following:

1.   The Fifth and Sixth Amendments to the United States Constitution guarantee defendants "a fair trial by a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722 (1961).  "At stake [in voir dire] is [defendant's] right guaranteed by the Sixth Amendment to an impartial jury; the principal way this right is implemented is through the system of challenges exercised during the voir dire of prospective jurors." United States v. Nell, 526 F.2d 1223, 1229 (5th Cir. 1976)(citing Swain v. Alabama, 380 U.S. 202 (1965)). The purpose of voir dire is to ensure a fair and impartial jury.  In this regard, defense counsel must question prospective jurors so that counsel can reasonably conclude that "the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court." Spencer v. State, 842 So. 2d 52, 68 (Fla. 2003).

2.   "The Sixth Amendment guarantees criminal defendants the effective assistance of counsel." Yarborough v. Gentry, 540

U.S. 1, 5 (2003).  To establish ineffective assistance of counsel at trial, a petitioner must demonstrate that (1) his counsel's performance was objectively deficient and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Accord Wiggins v. Smith, 123 S. Ct. 2527 (2003).

3.   The first example of trial counsel's deficiencies in conducting voir dire was the failure to challenge Melinda Whitley, ultimately Juror #2.  Whitley described the death penalty as "a good thing." (T-202).  On a scale of one to ten, with one being the most pro death penalty, Whitley rated herself a four (T. 206).  During voir dire, Whitley responded that she had been at the very scene of the murder not more than one or two hours before it took place (T. 197-198) (H. 79, 103-104). Whitley stated she felt nervous and fearful as a result of being at the Gayfer's department store so close to when the attack took place (T. 198, 210)(H. 79, 103-104).  Whitley also stated that she felt officials were negligent in allowing Mr. Dillbeck to escape from prison in the first place (T. 199).  Whitley stated, "he obviously had no right to be out where he could so easily hurt someone." (T. 199).  Whitley had already made up her mind that Mr. Dillbeck should at the very least be behind bars for eternity.  Based on Whitley's candid statements during voir dire, trial counsel clearly should have challenged her for

6

cause.  Yet, despite this information, trial counsel failed to challenge Whitley (T. 213).  Counsel's failure to challenge Whitley allowed her prejudiced views to go into the jury room and affect the verdict, thereby prejudicing Mr. Dillbeck.

4.   Trial counsel also failed to challenge Cynthia Krell, Juror #4.  Krell had read newspaper stories about the stabbing (T. 394).  Krell related she had knowledge that an escaped prisoner stabbed a woman to death in an attempt to steal her car (T. 394).  Krell also stated she could not vote for a life sentence, even if mitigating circumstances outweighed the aggravating circumstances, because the crime was "very disturbing" (T. 406) (H. 105).  Based upon her equivocal statements, trial counsel should have challenged Krell for cause.  Allowing Krell to remain on the jury was another instance of ineffective assistance of counsel.

5.   Another juror, Jason Zippay, also knew details of the case (T. 799).  Zippay had already made up his mind about the case, and stated "assuming everything I read in the newspaper was true, I am sure that he is guilty". (T. 799)(H. 106-107).  Despite these statements, trial counsel failed to challenge Zippay for cause.

6.   Juror #11, John Marshall, knew that Mr. Dillbeck was a prison escapee who had previously committed a murder (T. 969). Even though Marshall exhibited animosity toward Mr. Dillbeck,

defense counsel also failed to challenge him for cause (T. 981, H. 83).

7. Ruth Tadlock, ultimately an alternate juror, was yet another venire person that defense counsel did not challenge. Based on the publicity surrounding the trial, Tadlock was unequivocal in her belief that she believed Mr. Dillbeck to be guilty. Tadlock stated that she was unsure if she could put her previous knowledge aside and base her verdict solely on the evidence presented at trial (H. 84). Clearly, trial counsel should have challenged Tadlock for cause, because not only was she prejudiced against Mr. Dillbeck, she stated it was very likely her prejudice would affect the trial's outcome.

8. Trial counsel also failed to challenge Michelle Holocomb, an employee of Gayfer's department store. Holocomb was working at the Gayfer's store on the very day of the murder, yet she stated she knew nothing about this highly publicized murder. It is hard to believe someone working at a store on the very day a sensational crime occurs could know nothing about it given the extensive news coverage. Any reasonable person would doubt Holocomb's credibility. Yet, trial counsel did not challenge Holocomb (H. 85).

9. As a result of trial counsel's ineffectiveness in conducting voir dire, Mr. Dillbeck suffered prejudice affecting the trial's outcome. Trial counsel repeatedly failed to

8

challenge jurors who had prior knowledge and/or biased views of the case.  Trial counsel allowed jurors with prior knowledge to remain on the jury, thereby tainting the jury and the entire verdict that it reached.  Trial counsel had no reason to conserve challenges for the most biased jurors because the trial court awarded more peremptory challenges when needed.  Further, the court announced it would grant a challenge for cause those people who were aware that Mr. Dillbeck had been in jail for murder (H. 84).  Still, trial counsel kept these individuals on the jury.

10.  Most importantly, trial counsel failed to challenge jurors for cause who clearly stated they had prejudiced views of the case.  Impaneling a jury tainted with prior knowledge and prejudice cannot be considered effective assistance of counsel under reasonable standards of professional conduct.  Accordingly, Mr. Dillbeck suffered prejudice and was denied his right to an impartial jury as a result of his counsel's deficient performance.

## GROUND II

**MR. DILLBECK WAS DEPRIVED OF HIS SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS TO THE UNITED STATES CONSTITUTION WHEN THE TRIAL COURT ERRONEOUSLY RULED THAT CERTAIN JURORS WERE COMPETENT TO SERVE.**

All factual assertions contained elsewhere in this petition are fully incorporated herein by specific reference.  This claim

is evidenced by the following:

1.    The United States Supreme Court established the test
for juror competency in capital trials in <u>Wainwright v. Witt</u>,
469 U.S. 412, 424 (1985), where it stated:

> We therefore take this opportunity to clarify our
> decision in <u>Witherspoon</u>, and to reaffirm the above
> quoted standard from <u>Adams</u> as the proper standard
> for determining when a prospective juror may be
> excluded for cause because of his or her views on
> capital punishment. That standard is whether the
> juror's views would "prevent or substantially
> impair the performance of his duties as a juror in
> accordance with his instructions and his oath." We
> note that in dispensing with <u>Witherspoon's</u>
> reference to "automatic" decision-making, this
> standard likewise does not require that a juror's
> bias be proved with "unmistakable clarity." <u>Witt</u>
> at 424.

This standard also applies to prospective jurors, who
as in this case, favor the death penalty to the point that they
would impose it regardless of whatever mitigation was presented.
<u>Ross v. Oklahoma</u>, 487 U.S. 81 (1988).

2.    Here, the trial court erred and deprived Mr. Dillbeck
of his Sixth, Eighth, and Fourteenth Amendment rights by not
excusing several jurors challenged for cause by Mr. Dillbeck.
In addressing this issue on direct appeal, the Florida Supreme
Court determined that Mr. Dillbeck's claim was properly
preserved, yet the court denied relief on the merits. <u>Dillbeck
v. State</u>, 643 So.2d at 1028.  However, as will be demonstrated
herein, the state courts' determination is objectively
unreasonable and the courts' factual findings are rebutted by

clear and convincing evidence.  Here, the state courts' rulings were contrary to <u>Witt</u> and <u>Ross</u>.

3.   In response to trial counsel's questioning, Juror Lawrence stated that she would have automatically recommended death if Mr. Dillbeck had killed a policeman:

> Q.   If the case presented to you was one where a police officer was killed, if you felt like the mitigating outweighed the aggravating, could you ever recommend a sentence of life?
>
> A.   Uh-uh. It would have to be death.
>
> Q.   If a police officer was murdered, in your view, you would have to vote for death?
>
> A.   Yes.

(T. 61).

4.   Trial counsel objected to Juror Lawrence, relying upon <u>Witt</u> in that her views "would substantially interfere with [her] decision." (T. 64).  The trial court denied the objection because Mr. Dillbeck's case did not involve that scenario.  The trial court stated, "You asked her specifically the questions concerning this case and she did indicate to you that she could vote for a life sentence under the scenario of this case." (T. 66).

5.   Trial counsel had posed a series of hypotheticals for Juror Lawrence and the other members of the jury to consider. He asked each prospective juror if they could recommend a life sentence, assuming mitigating circumstances outweighed the

11

aggravating factors, if the defendant had raped the victim; if
the defendant had murdered the victim; if the defendant had
committed a brutal murder; if the defendant had murdered a
policeman; if the defendant had committed a second degree
murder; if the defendant had committed a prior first degree
murder; or if the defendant had been sentenced to life in prison
and then killed someone else (T. 60-62).

6.    To all of these hypotheticals, except for the one
involving the policeman, Juror Lawrence arguably could have
recommended a life sentence (T. 60-62).[4]  Of course, the guilt
phase of Mr. Dillbeck's case did not involve a police killing,
but in the penalty phase of the trial the jurors heard in great
detail about Mr. Dillbeck killing a Lee County deputy sheriff.
The obvious fear was that if Juror Lawrence had determined that
Mr. Dillbeck had avoided a death sentence once for killing a
policeman, she would make sure he received the death penalty in
the current case.  Had death been imposed as this very strong
death penalty advocate (T. 56) wanted the first time, she would
not have to make a recommendation now.  That fear was a
reasonable basis for believing she could not have rendered an
impartial recommendation based upon the law and evidence.

7.    Juror Lawrence's conditional "possibly" answers were

_____

[4]Regarding the second degree murder and the brutal murder,
she said she could "possibly" recommend life, but it would not be
easy (T 60-62).

not the type of response which the trial court could have used to justify his belief in this prospective juror's impartiality and fairness.  Such equivocation raised a reasonable doubt as to Juror Lawrence's ability to be fair and lacked an unequivocal commitment to impartiality.  Therefore, under <u>Witt</u>, there was a substantial likelihood that her views would have impaired her performance as a juror.  The state courts' determination to the contrary is objectively unreasonable.

8.  Darren Headrick strongly believed in the Biblical justification for the death penalty: "I believe that the death penalty was enacted by God in the Bible. . .I think it is what the penalty should be for first degree murder.  Someone who takes someone else's life should have their life taken." (T. 988).  When probed about any conflicts between following the law or his beliefs, he further said, "Well, my personal religious beliefs come first.  Those beliefs are that someone who is convicted of first degree murder should receive the death penalty."  Further questioning revealed that Headrick would resolve any conflicts between the law of God and man in favor of the law of God (T. 993).

9.  When pressed further by trial counsel, Headrick stated he could vote for life, but he qualified it by saying, "I would do my best to try. I can't guarantee anything, . . . But, in my mind, I would make an effort, yes."  Finally, Headrick

13

stated, "If he knows right from wrong, that would certainly lean toward a death penalty, but again, the circumstances would also enter into that decision." (T. 100). When trial counsel moved to excuse Headrick for cause, the court denied the motion saying that he "gave me the impression that he understood what the law was as explained to him and that he would follow that law." (T. 1003).

10. Based on his responses, it is clear that Headrick would follow the law, but what that law is, was in doubt. Whenever his version of the law of God merged with the law of man, he would follow the "law." But if the two diverged, he would not hesitate to abandon what the court would tell him and follow what he perceived God had said. What God had told man in Headrick's mind was abundantly clear; death for those who murder. Throughout the lengthy voir dire of Headrick, he repeatedly stated that his personal views would enter into this case, "no matter what." Despite an occasional answer that may have indicated his grudging willingness to weigh the aggravating factors against whatever mitigation he thought was present, the message could not have been louder that he believed that if Mr. Dillbeck was guilty of first degree murder, he should die for that crime.

11. At best, Juror Headrick said he would promise to follow the law. Such ambiguity should have disqualified him

from sitting on this jury.  In reality, Headrick clearly stated
that he would do what he believed "God's law" commanded him
regardless of what the court instructed.  Such willingness to
ignore "the law of man" meant that he was unqualified to sit as
a juror in this case because his responses amply exhibit an
unwillingness to discharge his duties as required by law and his
oath as a juror. <u>Witt</u>, <u>supra</u>.  From the totality of what Juror
Headrick said, the court should have granted Mr. Dillbeck's
challenge for cause, and the court erred in not doing so.  Here,
the state courts' determination is objectively unreasonable.
Habeas relief is warranted.

**GROUND III**

**TRIAL COUNSEL'S CONCESSION OF AN AGGRAVATING
CIRCUMSTANCE CONSTITUTES INEFFECTIVE ASSISTANCE
OF COUNSEL.**

All factual assertions contained elsewhere in this petition
are fully incorporated herein by specific reference.  This claim
is evidenced by the following:

1.   In <u>Strickland v. Washington</u>, 466 U.S. 668, 685 (1984),
the United States Supreme Court explained that under the Sixth
Amendment:

> . . . a fair trial is one which evidence subject
> to adversarial testing is presented to an
> impartial tribunal for resolution of issues
> defined in advance of the proceeding.

In order to insure that a constitutionally adequate adversarial

15

testing, and hence a fair trial, occur, defense counsel must provide the accused with effective assistance.  Accordingly, defense counsel is obligated "to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." <u>Strickland</u>, 466 U.S. at 685.

2.    "[I]nvestigations into mitigating evidence 'should comprise efforts to discover all reasonably available mitigating evidence and **evidence to rebut any aggravating evidence** that may be introduced by the prosecutor.'" <u>Wiggins</u>, 123 S.Ct. at 2527. (emphasis on original)(citations omitted).  In a sentencing proceeding, "[t]he basic concerns of counsel during a capital sentencing proceeding are to **neutralize the aggravating factors advanced by the state**, and to present mitigating evidence." <u>Starr v. Lockhart</u>, 23 F.3d 1280, 1285 (8th Cir.  1994); <u>see also</u> <u>Rompilla v. Beard</u>, 125 S.Ct. 2456 (2005).

3.    Here, rather than attempting to neutralize the aggravating circumstances, counsel essentially conceded that the crime was heinous, atrocious and cruel (HAC).  Trial counsel told each juror during voir dire, opening statement and closing statement, that they would find that Mr. Dillbeck committed first-degree murder and that it was a particularly brutal killing.  In essence, trial counsel conceded the HAC aggravator for the penalty phase.

4.    If the State seeks the death penalty in a capital

16

case, there are statutory aggravators that the State must prove to warrant imposition of the death penalty.  One of those aggravators is the heinous, atrocious and cruel factor.  The HAC aggravator is the commission of a capital crime that is unnecessarily torturous to the victim or pitiless. Douglas v. State, 575 So.2d 165 (Fla. 1991); McGill v. State, 428 So.2d 649 (Fla. 1983).  This aggravator requires proof beyond a reasonable doubt of extreme and outrageous depravity. Wickham v. State, 593 So.2d 191 (Fla. 1991).  During the penalty phase the State can only introduce evidence that seeks to prove a statutory aggravator or rebuts a mitigator the defense offers. Fitzpatrick v. Wainwright, 490 So.2d 938, 940 (Fla. 1986).

5.   When a murder involves repeated blows or stabbing, the State has the burden of proving beyond a reasonable doubt that the victim received repeated stab wounds, that the victim died of a particular stab wound and that the victim had defensive wounds. Halburton v. State, 561 So.2d 248, 252 (Fla. 1990); Derrick v. State, 641 So.2d 378, 381 (Fla. 1994).  The jury resolves the question of whether HAC is applicable to a particular death case. Hansboro v. State, 509 So.2d 1081, 1086 (Fla. 1987).  In cases of repeated stabbing, the HAC factor may be found. Nibert v. State, 508 So.2d 1, 4 (Fla. 1987); Johnston v. State, 497 So.2d 863, 871 (Fla. 1986).  Nevertheless, the State must prove HAC beyond a reasonable doubt to use it is a

statutory aggravator. <u>Hamilton v. State</u>, 547 So.2d 630 (Fla. 1989); <u>King v. State</u>, 514 So.2d 354 (Fla. 1987). If the State fails to offer any evidence that the crime was heinous, atrocious and cruel, the factor cannot be used as an aggravator during the penalty phase. <u>Hamilton</u>, 547 So.2d at 633-4.

6. Here, when trial counsel conceded the HAC aggravator, the State's burden was vitiated. Trial counsel's concession of brutality defied effective assistance of counsel, and conveyed to the jury that the HAC aggravator was a foregone conclusion. Had counsel performed effectively, there is a reasonable probability that the outcome would have been different, that is, that Mr. Dillbeck would have received a recommendation of a life sentence because one of the aggravators may not have been present.

<strong>GROUND IV</strong>

> **MR. DILLBECK WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY INTRODUCED DETAILS OF MR. DILLBECK'S PREVIOUS CRIMINAL ACTIVITY TO THE JURY DURING THE PENALTY PHASE.**

All factual assertions contained elsewhere in this petition are fully incorporated herein by specific reference. This claim is evidenced by the following:

1. In <u>Proffitt v. Florida</u>, 428 U.S. 242 (1976), the United States Supreme Court stated:

> While the various factors to be considered by the sentencing authorities do not have numerical

18

weights assigned to them, the requirements of
*Furman* are satisfied when the sentencing
authority's discretion is guided and channeled by
requiring examination of specific factors that
argue in favor of or against imposition of the
death penalty, thus eliminating total
arbitrariness and capriciousness in its
imposition.

The directions given to judge and jury by the
Florida statute are sufficiently clear and precise
to enable the various aggravating circumstances to
be weighed against the mitigating ones.  As a
result, the trial court's sentencing discretion is
guided and channeled by a system that focuses on
the circumstances of each individual homicide and
individual defendant in deciding whether the death
penalty is to be imposed.

2.   Aggravating circumstances specified in Florida's

capital sentencing statute are exclusive, and no other

circumstances or factors may be used to aggravate a crime for

purposes of the imposition of the death penalty. <u>Miller v.

State</u>, 373 So. 2d 882 (Fla. 1979).

3.   However, the penalty phase of Mr. Dillbeck's trial did

not comport with these essential principles due to trial

counsel's ineffective assistance.  Rather than fulif
lling his

duty to rebut aggravating circumstances, <u>Wiggins</u>, 123 S.Ct. at

2527, trial counsel instead exposed the jury to otherwise

impermissible aggravating circumstances.

4.   Trial counsel introduced evidence numerous offenses

that Mr. Dillbeck was never charged with nor convicted of, and

trial counsel went into detail in some of those matters during

the penalty phase.  During his opening statement of the penalty

phase, trial counsel stated: "[M]y client has done some terrible things during the course of his life. . .when he was fifteen years old in Indiana, he stabbed a fellow, an incident chillingly similar to the one you heard at trial." (T. 217 1-72).  Counsel also stated that Mr. Dillbeck committed a burglary of a conveyance, grand theft and a grand theft auto to get to Florida, where he was also arrested for possession of marijuana (T. 2171-72).  Trial counsel further described Mr. Dillbeck's 1983 prison escape attempt to the jury (T. 2174).  Additionally, counsel described a 1984 incident wherein Mr. Dillbeck stabbed an inmate in prison (T. 2175).  Counsel also told the jury that Mr. Dillbeck stabbed a man in Indiana while he was high on drugs (T. 2184).  Of these offenses, Mr. Dillbeck was only convicted of the prior attempted escape.  None of the other offenses were ever charged against Mr. Dillbeck.

5.  It must be presumed that the jury weighed these nonstatutory aggravating circumstances when sentencing Mr. Dillbeck.  See Espinosa v. Florida, 112 S. Ct. 2926 (1992).[5]  Due to trial counsel's ineffectiveness, the jury was improperly influenced by nonstatutory aggravating circumstances.

6.  An attorney is responsible for presenting legal argument consistent with the applicable principles of law.

_____

[5]The State subsequently went over in detail the same crimes that were already described by trial counsel. (T. 2290-92; 2294-2300).

<u>Davis v. Secretary for the Department of Corrections</u>, 341 F.3d 1310 (11th Cir. 2003); <u>Harrison v. Jones</u>, 880 F.2d 1279 (11th Cir. 1989).  No tactical motive can be ascribed to an attorney whose omissions are based on ignorance. see <u>Brewer v. Aiken</u>, 935 F.2d 850 (7th Cir. 1991); <u>Hardwick v. Crosby</u>, 320 F.3d 1127, 1163 n9 (11th Cir. 2003).  Here, counsel's admission and concession of these improper aggravating circumstances to the jury prejudiced the outcome of the penalty phase.  Habeas relief is warranted.

GROUND V

**THE TRIAL COURT ERRED IN INSTRUCTING THE JURY REGARDING THE HEINOUS, ATROCIOUS AND CRUEL AGGRAVATING FACTOR BECAUSE THAT INSTRUCTION FAILED TO ADEQUATELY LIMIT AND GUIDE THE JURY'S DELIBERATIONS IN VIOLATION OF MR. DILLBECK'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

All factual assertions contained elsewhere in this petition are fully incorporated herein by specific reference.  This claim is evidenced by the following:

1.  Mr. Dillbeck's jury was instructed in an unconstitutional manner regarding the heinous, atrocious, and cruel aggravating factor.  The trial court instructed the jury as follows:

>     Heinous means extremely wicked or shockingly evil.

>     Atrocious means outrageously wicked and vile.

>     Cruel means designed to inflict a high degree of pain, utter indifference to, or even enjoyment of, the suffering of others.

21

> The kind of crime intended to be included as
> heinous, atrocious, or cruel is on accompanied by
> additional acts that show that the crime was
> conscienceless[sic] or pitiless and unnecessarily
> torturous to the victim.

(T. 2743-44).

2.   This instruction is facially vague and overbroad in violation of the Eighth and Fourteenth Amendments.  <u>Shell v. Mississippi</u>, 498 U.S. 1,2 (1990); <u>Maynard v. Cartwright</u>, 486 U.S. 356, 361-62 (1988).  In <u>Espinosa v. Florida</u>, 505 U.S. 1079 (1992),[6] the United States Supreme Court rejected the Florida Supreme Court's decision in <u>Smalley v. State</u>, 546 So. 2d 720 (Fla. 1989), finding <u>Maynard</u> inapposite to capital proceedings in Florida.  The decision in <u>Espinosa</u>, finding that <u>Maynard</u> and <u>Shell</u> are applicable in Florida, issued before Mr. Dillbeck's direct appeal became final.  Accordingly, <u>Espinosa</u> constitutes the state of the federal constitutional law as to Mr. Dillbeck's case.  The Florida Supreme Court specifically held on direct appeal that this claim was without merit, <u>Dillbeck</u>, 643 So.2d at 1031, fn.6, and thereby ignored the holdings of <u>Espinosa</u>, <u>Maynard</u> and <u>Shell</u>.

3.   Here, the state court's determination was

---

[6]<u>Espinosa</u> was decided after Mr. Dillbeck's initial brief and the State's answer brief were submitted to the Florida Supreme Court; however, Mr. Dillbeck's reply brief raising <u>Espinosa</u> and the oral argument were filed and heard before the decision in Mr. Dillbeck's case was rendered.

objectively unreasonable, as it failed to comprehend that the

Espinosa Court was holding that the decisions in Maynard v.

Cartwright, and Shell v. Mississippi, apply equally to states

where the jury is not the final sentencer, in this case Florida.

Espinosa, 505 U.S. at 1082.[7]  Significantly, the Supreme Court

noted that "We have held instructions more specific and elaborate

than the one given in the instant case unconstitutionally vague.

See Shell v. Mississippi, 498 U.S. ----, 111 S.Ct. 313, 112

L.Ed.2d 1 (1990); Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct.

1853, 100 L.Ed.2d 372 (1988); Godfrey v. Georgia, 446 U.S. 420,

100 S.Ct. 1759, 64 L.Ed.2d 398 (1980)." Id. at 1081.

    4.  In Shell v. Mississippi, 498 U.S. at 1, the trial court

had instructed the jury that it could consider whether the

murder was "especially heinous, atrocious or cruel."  It had

further provided a limiting instruction:

> [T]he word heinous means extremely wicked or
> shockingly evil; atrocious means outrageously
> wicked and vile; and cruel means designed to
> inflict a high degree of pain with indifference
> to, or even enjoyment of the suffering of others.

---

[7]As explained in Espinosa, in a state where the judge and
jury weigh aggravating and mitigating circumstances, as in
Florida, weighing of an invalid aggravating factor violates the
Eighth Amendment.  Id. (citing Sochor v. Florida; Stringer v.
Black, 112 S. Ct. 1130 (1992); Parker v. Dugger, 111 S. Ct. 731
(1991); Clemons v. Mississippi, 494 U.S. 738, 752 (1990)).  Thus,
an aggravating factor is invalid if its description is so vague
as to leave the sentencer without sufficient guidance for
determining the presence or absence of the factor.  Espinosa, 505
U.S. at 1082.

Id. at 2.  These definitions were extremely similar to those given to Mr. Dillbeck's jury, yet the Supreme Court found them inadequate and constitutionally vague. Id.  Also, in Maynard, the United States Supreme Court affirmed the Tenth Circuit's grant of relief on similar instructions, explaining that this procedure did not comply with the fundamental eighth amendment principle requiring the limitation of capital sentencers' discretion.  The Court stated that "the channeling and limiting of the sentencer's discretion in imposing the death penalty is a fundamental constitutional requirement for sufficiently minimizing the risk of wholly arbitrary and capricious action." Maynard, 486 U.S. at 361-62.

　　　　5.　　Here, it is clear that the Florida Supreme Court's decision was contrary to well-established law when it concluded that Mr. Dillbeck's claim was without merit.  Espinosa made it clear that jury instructions in Florida had to comport with the Eighth Amendment standards detailed in Maynard and in Shell.  As in Maynard and in Shell, the failure to instruct on the limitations left the jury free to ignore the limitations, and left no principled way to distinguish Mr. Dillbeck's case from a case in which the limitations were applied and death, as a result, was not imposed.  Thus, the jury was left with open-ended discretion found to be invalid in Furman v. Georgia, 408 U.S. 238 (1972), Maynard and Shell.  Since the jury in Florida

24

is a co-sentencer, the failure to provide the jury with a narrowing construction of the aggravating circumstance that comports with Eighth Amendment standards was constitutional error.

### GROUND VI

**THE COURT ERRED IN REFUSING TO INSTRUCT THE JURY THAT THE STATE HAD TO PROVE THAT THE AGGRAVATING CIRCUMSTANCES OUTWEIGHED THE MITIGATING CIRCUMSTANCES, THEREBY REQUIRING MR. DILLBECK TO PROVE THAT DEATH WAS NOT THE APPROPRIATE PUNISHMENT IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

All factual assertions contained elsewhere in this petition are fully incorporated herein by specific reference.  This claim is evidenced by the following:

1.   At the penalty phase charge conference, counsel for Mr. Dillbeck requested several instructions that essentially asked that if the jury or individual jurors could not decide if the aggravating circumstances outweighed the mitigating, then they should recommend a life sentence (T. 3355-3370).  The trial court denied that request (T. 3370).  Instead, the trial court instructed the jury as follows:

> Should you find sufficient aggravating
> circumstances do exist, it will then be your duty
> to determine whether mitigating circumstances
> exist that outweigh the aggravating
> circumstances.

(T. 2744).

2.    Under Florida law, a capital sentencing jury must be:

> [T]old that the state must establish the existence of one or more aggravating circumstances before the death penalty could be imposed . . .

> [S]uch a sentence could be given **if the state showed the aggravating circumstances outweighed the mitigating circumstances.**

State v. Dixon, 283 So. 2d 1 (Fla. 1973)(emphasis added).  See also Mullaney v. Wilbur, 421 U.S. 684 (1975).  This straightforward standard was never applied at the penalty phase of Mr. Dillbeck's capital proceedings.

3.    The instruction given here violated the Eighth and Fourteenth Amendments in two ways.  First, the instructions shifted the burden of proof to Mr. Dillbeck on the central sentencing issue of whether he should live or die.  Under Mullaney, the unconstitutional burden-shifting violated Mr. Dillbeck's due process and eighth amendment rights.  The jury was not instructed in conformity with the standard set forth in Dixon.  Since the jury in Florida is a sentencer it must be properly instructed.  Johnson v. Singletary, 612 So. 2d 575 (Fla. 1993).

4.    Second, in being instructed that mitigating circumstances must outweigh aggravating circumstances before the jury could recommend life, the jury was effectively told that once aggravating circumstances were established, it need not consider mitigating circumstances unless those mitigating

26

circumstances were sufficient to outweigh the aggravating circumstances.  Cf. Mills v. Maryland, 108 S. Ct. 1860 (1988); Hitchcock v. Dugger, 107 S. Ct. 1821 (1987).  Thus, the jury was precluded from considering mitigating evidence and from evaluating the "totality of the circumstances" in considering the appropriate penalty.  Dixon, supra.  According to the instructions, jurors would reasonably have understood that only mitigating evidence which rose to the level of "outweighing" aggravation need be considered.

5.   There can be no doubt that the jury understood that Mr. Dillbeck had the burden of proving whether he should live or die and according to the instructions, jurors would reasonably have understood that only mitigating evidence which rose to the level of "outweighing" aggravation need be considered.  The instructions given to Mr. Dillbeck's jury were inaccurate and dispensed misleading information regarding who bore the burden of proof as to whether a death or a life recommendation should be returned.

6.   Shifting the burden to the defendant to establish that mitigating circumstances outweigh aggravating circumstances conflicts with the principles of Mullaney, for such instructions unconstitutionally shift to the defendant the burden with regard to the ultimate question of whether he should live or die.  In so instructing a capital sentencing jury, a court injects

27

misleading and irrelevant factors into the sentencing determination, thus violating <u>Caldwell v. Mississippi</u>, 472 U.S. 320 (1985), <u>Hitchcock v. Dugger</u>, 107 S. Ct. 1821 (1987), and <u>Maynard v. Cartwright</u>, 108 S. Ct. 1853 (1988).

7.   Judicial instructions at Mr. Dillbeck's capital penalty phase required the jury to impose death unless mitigation was not only produced by Mr. Dillbeck, but also unless Mr. Dillbeck proved that the mitigation he provided outweighed and overcame the aggravation.  The trial court then employed the same standard in sentencing Mr. Dillbeck to death. <u>See</u> <u>Zeigler v. Dugger</u>, 524 So. 2d 419 (Fla. 1988)(trial court is presumed to apply the law in accord with manner in which jury was instructed).  This standard shifted the burden to Mr. Dillbeck to establish that life was the appropriate sentence and limited consideration of mitigating evidence to only those factors proven sufficient to outweigh the aggravation.  The standard given to the jury violated state law; the jury could not "full[y] consider[]" and "give effect to" mitigating evidence.  <u>Penry v. Lynaugh</u>, 109 S. Ct. 2934, 2951 (1989).  This burden-shifting standard thus "interfered with the consideration of mitigating evidence."  <u>Boyde v. California</u>, 110 S. Ct. 1190, 1196 (1990).  Since "[s]tates cannot limit the sentencer's consideration of any relevant circumstance that could cause it to decline to impose the [death] penalty," <u>McCleskey v. Kemp</u>,

481 U.S. 279, 306 (1987), the instruction provided to Mr.
Dillbeck's sentencing jury, as well as the standard employed by
the trial court, violated the eighth amendment's "requirement of
individualized sentencing in capital cases [which] is satisfied
by allowing the jury to consider all relevant mitigating
evidence." <u>Blystone v. Pennsylvania</u>, 110 S. Ct. 1078, 1083
(1990). <u>See also Lockett v. Ohio</u>, 438 U.S. 586 (1978);
<u>Hitchcock v. Dugger</u>, <u>supra</u>. The instructions gave the jury
inaccurate and misleading information regarding who bore the
burden of proof as to whether a death recommendation should be
returned.

        8. The standard which the judge used to instruct Mr.
Dillbeck's jury, and upon which the judge relied, is an
egregious abrogation of Florida law and therefore Eighth
Amendment principles. <u>See McKoy v. North Carolina</u>, 110 S. Ct.
1227, 1239 (Kennedy, J., concurring)(a death sentence arising
from erroneous instructions "represents imposition of capital
punishment through a system that can be described as arbitrary
or capricious"). In this case, Mr. Dillbeck was required to
establish (prove) that life was the appropriate sentence, and
the jury's and judge's consideration of mitigating evidence was
limited to mitigation sufficient to outweigh aggravation. Here,
habeas relief is warranted.

GROUND VII

**FLORIDA'S CAPITAL SENTENCING STATUTE VIOLATES THE
SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED
STATES CONSTITUTION.**

All factual assertions contained elsewhere in this petition
are fully incorporated herein by specific reference.  This claim
is evidenced by the following:

1.   Ring v. Arizona, 122 S.Ct. 2428 (2002), held
unconstitutional a capital sentencing scheme that makes imposing
a death sentence contingent upon the finding of aggravating
circumstances and that assigns responsibility for finding that
circumstance to the judge.  Florida's capital sentencing scheme
violates the notice and jury trial rights guaranteed by the
Sixth and Fourteenth Amendments because it does not allow the
jury to reach a verdict with respect to an "aggravating fact
[that] is an element of the aggravated crime" punishable by
death.  Ring, 122 S. Ct. at 2441 (quoting Apprendi v. New
Jersey, 530 U.S. 466, 501 (2000)(Thomas., J., concurring)).

2.   Florida law does provide for the jury to hear evidence
and "render an advisory sentence." Sec. 921.141(2), Fla. Stat.
However, the jury's role does not satisfy the Sixth Amendment
under Ring.  Section 921.141(2) does not require a jury verdict,
but an "advisory sentence."

3.   Throughout the trial, the jury was repeatedly told
that their role at the sentencing phase of the trial was to

30

merely "recommend" a sentence to the judge and that their recommendation was only advisory.  This implied that the judge alone had the responsibility to determine the sentence to be imposed for first degree murder.

4.   The Florida statute does not require the jury's vote to be unanimous regarding the existence of an aggravating circumstance, regarding whether "sufficient" aggravating circumstances exist, or regarding whether mitigating circumstances exist which outweigh the aggravating circumstances.  The statute requires only a majority vote of the jury in support of its advisory sentence. Sec. 921.141(2), Fla. Stat.

5.   In addition to not requiring jury unanimity of a sentence nor jury unanimity of each aggravator, it is not required that the prosecution inform the defendant in the indictment which aggravating factors will be presented. Because the State did not submit to the grand jury and the indictment did not state the essential elements of capital first-degree murder, Mr. Dillbeck's rights under the Sixth Amendment were violated.

6.   Further, under Florida law, a death sentence may not be imposed unless the judge finds the fact that "sufficient aggravating circumstances" exist to justify imposing the death penalty.  Fla. Stat. sect. 921.141(3).  Because imposing a death

sentence is contingent on this fact being found, and the maximum sentence that could be imposed in the absence of that finding is life in prison, the Sixth Amendment required that the State bear the burden of proving it beyond a reasonable doubt.  <u>Ring</u>, 122 S.Ct. at 2432.  ("Capital defendants ...are entitled to a jury determination of any fact on the legislature conditions an increase in their maximum punishment.")

7.   Mr. Dillbeck's jury was unconstitutionally instructed to determine "whether sufficient aggravating circumstances exist to justify the imposition of the death penalty and whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist."

8.   The instruction given Mr. Dillbeck's jury violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Sixth Amendment's right to trial by jury because it relieves the State of its burden to prove beyond a reasonable doubt the element that "sufficient aggravating circumstances" exist that outweigh mitigating circumstances by shifting the burden of proof to the defendant to prove that the mitigating circumstances outweigh sufficient aggravating circumstances.  <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 698 (1975).

9.   Mr. Dillbeck acknowledges that the United States Supreme Court has held that <u>Ring</u> does not apply retroactively to cases that were final when <u>Ring</u> was decided. <u>Schriro v.</u>

32

<u>Summerlin</u>, 124 S. Ct. 2519 (2004).  While recognizing this decision, Mr. Dillbeck maintains, in good faith, both on substantive and procedural grounds, that <u>Ring</u> should not be barred from retroactive application by <u>Teague</u> [<u>v. Lane</u> 109 S. Ct. 1060 (1989)].

### <u>CONCLUSION AND RELIEF SOUGHT</u>

WHEREFORE, Petitioner prays:

A.   That a writ of habeas corpus be directed to the Respondent;

B.   That Mr. Dillbeck be accorded an evidentiary hearing on the allegations of his petition;

C.   That, after a full hearing, Mr. Dillbeck be discharged from his unconstitutional convictions and sentence of death; and

D.   That Mr. Dillbeck be allowed other, further and alternative relief as may seem just, equitable and proper under the circumstances.

Respectfully submitted,


/S/ D. Todd Doss
D. Todd Doss
Florida Bar No. 910384
725 S.E. Baya Dr., Ste 102
Lake City, FL 32025-6092
Telephone (386) 755-9119
Facsimile (386) 755-3181

Attorney for Petitioner

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by Electronic Service (ECF) to Charmaine Millsaps, Office of the Attorney General, The Capitol, Tallahassee, FL 32399-1050 on this 28th day of December, 2007.


/S/ D. Todd Doss