IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DONALD DAVID DILLBECK,

    Petitioner,

v.                               Case No. 4:07-cv-388-MW

RICKY D. DIXON,               CAPITAL CASE
FLORIDA DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## RESPONSE TO ORDER RELATING TO PETITIONER'S MOTION TO PERMIT CAPITAL HABEAS UNIT COUNSEL TO APPEAR IN STATE COURT

Petitioner responds to this Court's Order directing briefing on two questions relating to Petitioner's motion to permit Capital Habeas Unit ("CHU") of the Office of the Federal Public Defender to appear in state court to assist in Petitioner's time-sensitive death warrant litigation. Petitioner respectfully submits:

**I.**     **Background**

On Monday, January 23, 2023, Petitioner's death warrant was signed and his execution scheduled for February 23, 2023. That same day the Florida Supreme Court entered an expedited schedule for the death warrant proceedings before the state courts, including that the state circuit court enter a final order ruling on any Rule 3.851 motion that Petitioner files by 3:00 p.m. on February 7, 2023; and,

1

scheduling briefing from appeal of the order to be concluded by Tuesday, February 14, 2023. Thus, the schedule leaves less than 9 days for Petitioner to institute any federal proceedings that require exhaustion of his constitutional claims in the state courts.[1]

Based on the circumstances in Petitioner's case—which include, but are not limited to: the extremely short warrant period along with the time and efforts required to effectively represent a condemned inmate under the exigencies of a death warrant, the potential litigation of claims relating to Petitioner's 1979 homicide conviction which was used as an aggravator in his death case and for which he is unrepresented and not entitled to counsel, and the potential constitutional claims that Petitioner may pursue before this Court and the United States Supreme Court—on January 25, 2023, the CHU filed a motion for authorization to appear before the state courts. ECF No. 66. Shortly thereafter, Respondent filed a Notice of Intent to Respond. ECF No. 67.

Based on the pleadings, this Court entered an order requesting expedited briefing as to two questions due to be filed by noon on January 26, 2023.

## II.  Question 1

This Court has directed that the parties address the following question:

---

[1] Petitioner does not fault the Florida Supreme Court for leaving little time for filing and adjudication of constitutional claims. That is simply a reality of a thirty-one day warrant period.

> First, is there any dispute that this Court does not have carte blanche to authorize CHU counsel's representation in Petitioner's state court proceeding? In other words, is there any dispute this Court is constrained by 18 U.S.C. § 3599 and, as suggested by Judge Lagoa, this Court should first make a finding that Petitioner is not "adequately represented" in state court before authorizing CHU counsel to assist in Petitioner's state court proceeding?

Particularly in a death warrant case where a stay of execution is being sought, this Court does have carte blanche to authorize CHU counsel's representation in Petitioner's state court proceeding. Judge Lagoa's concurrence is incorrect and not binding on this Court.

### A. Under Booker Respondent Lacks Standing to Object

As an initial matter, Respondent lacks standing to object to the CHU's representation of Petitioner in his death warrant litigation. This is so because *Booker v. Secretary, Florida Department of Corrections*, is controlling Eleventh Circuit precedent that squarely rejects Respondent's position that she has Article III standing to interfere in the matter of Petitioner's legal representation. 22 F.4th 954, 959 (11th Cir. 2022). Because the state court is well able "to reject appearances by CHU counsel," a district court order granting CHU counsel's request to litigate death warrant claims on Petitioner's behalf in state court does not establish any "injury" to Respondent within the meaning of Article III. *Id.* Such an order also does not cause an injury to Respondent on state-sovereignty grounds because the State "has no interest in how federal funds are spent," and all that an order of appointment does

3

is permit "federal funds [to] be spent on . . . CHU counsel." 22 F.4th at 959. Because Respondent lacks standing on the issues, this Court should not consider her arguments.

### B. This Court Need Not Find Existing State Court Counsel Inadequate Before Expanding the Scope of CHU's Appointment

Judge Lagoa's suggestion that district courts should determine the adequacy of state appointed counsel before expanding the scope of federally appointed counsel is not supported by the statute. Sec. 3599(a)(2), governs the initial appointment of counsel, stating: "any defendant who is or becomes financially unable to obtain adequate representation…shall be entitled to the appointment of one or more attorneys…." But it is § 3599(e) that governs the *scope* of federally appointed counsel's representation, including whether to permit counsel to appear before the state court. Thus, this Court does not have to make an adequacy finding before expanding the scope of the CHU's representation because, at this juncture, the relevant provision is § 3599(e), not § 3599(a)(2). Judge Lagoa's concurrence expressing different views is not binding on this Court because the Eleventh Circuit dismissed *Booker* on Article III grounds, holding that it lacked jurisdiction to entertain the appeal at all.

Further, the United States Supreme Court recognized the distinction of the appointment and scope provisions of the statute in *Harbison v. Bell*, 556 U.S. 180 (2009). The Supreme Court stated:

4

> **Under a straightforward reading of the statute, subsection (a)(2) triggers the appointment of counsel for habeas petitioners, and subsection (e) governs the scope of appointed counsel's duties**. See § 3599(a)(2) (stating that habeas petitioners challenging a death sentence shall be entitled to "the furnishing of ... services in accordance with subsections (b) through (f)"). **Thus, once federally funded counsel is appointed to represent a state prisoner in § 2254 proceedings, she "shall also represent the defendant in such ... proceedings for executive or other clemency as may be available to the defendant." § 3599(e)**. Because state clemency proceedings are "available" to state petitioners who obtain representation pursuant to subsection (a)(2), the statutory language indicates that appointed counsel's authorized representation includes such proceedings.

*Harbison*, 556 U.S at 185-86 (emphasis added). As this Court previously appointed federal counsel pursuant to §3599(a)(2) and (e), Petitioner has only requested that this Court expand the scope of appointment for the purpose of death warrant litigation before the state court and in seeking a stay of execution pursuant to §3599(e). Sec. 3599(a)(2) requires that a death sentenced criminal defendant demonstrates the inability to obtain adequate counsel to represent her during proceedings pursuant to 28 U.S.C. § 2254, but the expansion of the scope of counsel's representation does not trigger an (a)(2) inquiry.[2]

Further, in *Harbison*, the Supreme Court specifically recognized the authority of district courts to expand federal counsel's scope of appointment:

---

[2] Indeed, this Court could not appoint counsel to represent Petitioner before the state courts, however this Court may expand the scope of federal counsel's appointment to include death warrant litigation before the state courts.

> **Pursuant to § 3599(e)**'s provision that counsel may represent her client in "other appropriate motions and procedures," **a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation**. This is not the same as classifying state habeas proceedings as "available post-conviction process" within the meaning of the statute.

*Id*. at 190, fn.7 (emphasis added); *see also Gary v. Warden, Ga. Diagnostic Prison*, 686 F.3d 1261, 1274 (11th Cir. 2012) ("The Court noted, however, that the language of the statute does contemplate some limited federal funding of counsel in state court proceedings. In one footnote, the Court stated that the "other appropriate motions and procedures" language in § 3599(e) indicated that a District Court may determine that counsel appointed to represent a habeas petitioner may need to 'exhaust a [federal constitutional] claim [in state court] in the course of her federal habeas representation' and may be compensated for such work."). The suggestion that Petitioner must establish, as a threshold matter to granting his motion to permit federal counsel to litigate death warrant claims before the state courts, that his state court counsel is inadequate, is not supported by the plain language in the statute or *Harbison*. This Court should not follow Judge Lagoa's concurrence.

**III.   Question 2**

This Court also directed the parties to address a second question:

Second, given the time-sensitive and serious nature of this case in that Petitioner's execution date has been set a month out, is it not appropriate to find that, under the unique circumstances presented here Petitioner has demonstrated that he is not "adequately represented" by

6

>the single lawyer appointed to assist him in his state court proceedings and thus entitled to have CHU counsel authorized to represent him in state court?

Even if Judge Lagoa's concurrence were the law, and an inadequacy requirement were to exist before this Court could expand the scope of the CHU's representation, Petitioner agrees that the threshold has been met by the current circumstances accompanying the signing of his death warrant. Petitioner is currently represented before the Florida state courts by Baya Harrison, pursuant to Fla. Stat. § 27.710.[3] Petitioner's execution is scheduled for February 23, 2023, a mere 31 days after his death warrant was signed. Death warrant litigation generally encompasses an entire round of litigation before the state courts relating to various constitutional issues that are then litigated before the federal courts. The Florida Supreme Court's schedule requires that Petitioner complete that round of litigation in a mere seventeen days.[4] The litigation is time consuming and complex, and it requires maximum effort from a team of lawyers, investigators, and support staff.

Indeed, individuals under warrant are often represented by a Capital Collateral Regional Counsel office, where several attorneys and investigators are involved in the litigation. And in the most recent warrant case, James Dailey, numerous counsel

---

[3] CHU Counsel and Mr. Harrison have communicated over the past few days. Mr. Harrison has indicated that he intends to designate CHU counsel to assist him in state court.

[4] This includes all of the litigation before the circuit court as well as the briefing before the Florida Supreme Court.

were involved in the ligation on his behalf, even though he had state-appointed counsel under §§ 27.7001-27.715, Fla. Stat. (2022). Mr. Dailey was represented–without objection from the State–by Capital Collateral Regional Counsel-Middle, Innocence Project of Florida, Inc., Milbank LLP, and three private attorneys, each of whom appeared *pro hac vice*. *See Dailey v. State*, No. 1985-CF-007084 (Pinellas Cty. Cir. Ct.).

In addition, prevailing authority supports the CHU's appearance before the state courts. Under the ABA Guidelines, in any capital postconviction litigation, "[t]he defense team should consist of no fewer than two attorneys qualified in accordance with Guideline 5.1, an investigator, and a mitigation specialist." *ABA Guidelines*, 4.1 2003. Likewise, Fla. Stat. § 27.710(6) permits Registry counsel to designate another qualified attorney to assist in a capital defendant's postconviction proceedings.

Capital postconviction litigation requires specialized knowledge and experience. *See, e.g.*, 18 U.S.C. § 3599(d) (acknowledging the unique and complex nature of capital habeas litigation); *McFarland*, 512 U.S. at 856–57 (noting that "th[e Supreme] Court's death penalty jurisprudence unquestionably is difficult even for a trained lawyer to master") (quoting *Murray v. Giarratano*, 492 U.S. 1, 28 (1989)); CJA Plan, Section XIV(B)(4) (noting the "complex and demanding nature of capital cases."). The CHU attorneys are highly skilled and experienced. *Lugo v. Secretary,*

*Florida Dept. of Corrs.*, 750 F.3d 1198, 1215 (11th Cir. 2014). Even just two of the Assistant Federal Defenders in the office have over a combined half-century of experience litigating capital postconviction cases before the state and federal courts in Florida, including representing numerous clients in their death warrant litigation.

Finally, courts in this district have previously authorized the CHU to appear in state court to assist appointed state court counsel in much less demanding circumstances. *See, e.g.*, *Walls v. Inch*, No. 3:06-cv-00237-MCR (N.D. Fla. May 12, 2021); *Booker v. Jones*, No. 1:08-cv-00143-MCR (N.D. Fla. November 2, 2020); *Heath v. Jones*, No. 1:09-cv-148-MCR (N.D. Fla. April 3, 2017); *Foster v. Jones*, No. 5:03-cv-108-MCR (N.D. Fla. Mar. 31, 2017); *Lawrence v. Florida*, No. 3:02-cv-00097-RH (N.D. Fla. March 16, 2017); *Hutchinson v. Jones*, No. 3:13-cv-128-MW (N.D. Fla. Mar. 2, 2017); *Hertz v. Jones*, No. 4:06-cv-00507-RH (N.D. Fla. August 10, 2016); *Archer v. Jones*, No. 3:06-cv-312-MCR (N.D. Fla. June 3, 2016); *Bailey v. Jones*, No. 5:14-cv-333-MCR (N.D. Fla. Aug. 31, 2016); *Booker v. Jones*, No. 1:08-cv-143-MCR (N.D. Fla. June 2, 2016); *Grim v. Jones*, No. 3:08-cv-002-MCR (N.D. Fla. June 2, 2016); *Guardado v. Jones*, No. 4:15-cv-00256-RH (N.D. Fla. May 27, 2016).[5] Thus, it is more than appropriate for this Court to

---

[5] Likewise, federal district courts in the middle district of Florida have made such authorizations. *See, e.g.*, *See, e.g.*, *Lott v. Att'y Gen, State of Fla., et al.*, No. 6:06-cv-00778-ACC (M.D. Fla. January 5, 2018); *Foster v. Sec'y, Fla. Dep 't of Corr.*, No. 6:06-cv-00648-JA (M.D. Fla. September 26, 2017); *Alston v. Sec'y, Fla. Dep 't of Corr.*, No. 3:04-cv-00257-TJC (M.D. Fla. January 30, 2017); *Wade v. Sec'y, Fla.*

9

authorize Petitioner's counsel to appear before the state courts under the unique circumstances present here.

## IV.  Conclusion

Petitioner requests that this Court authorize the expansion of the scope of the CHU's appointment to include appearance before the state courts in his death warrant litigation, to seek a stay of execution, and should there be any litigation related to his 1979 conviction for homicide when he was 15 years old which was used as an aggravator in his death penalty case.

Respectfully submitted,

/s/ Linda McDermott
Linda McDermott
FBN 0102857
Chief, Capital Habeas Unit
Office of the Federal Public Defender
Northern District of Florida
227 N. Bronough St., Suite 4200
Tallahassee, FL 32301-1300
linda_mcdermott@fd.org
(850) 322-2172

---

*Dep 't of Corr.*, No. 3:15-00200-BJD (M.D. Fla. January 3, 2017); *McMillian v. Sec'y, Fla. Dep 't of Corr.*, No. 3:16-cv-00923-TJC (M.D. Fla. December 28, 2016); *Stephens v. Sec'y, Fla. Dep 't of Corr,*, No. 3:08-cv-00260-TJC (M.D. Fla. December 28, 2016); *Carter v. Sec'y, Fla. Dep 't of Corr.,* No. 3:15-cv-01198-TJC (M.D. Fla. September 26, 2016); *Rigterink v. Sec'y, Fla. Dep 't of Corr.,* No. 8:16-cv-01680-VMC (M.D. Fla. August 5, 2016).